**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Robert Shaft,

Plaintiff,

v.

Social Security Administration Commissioner,

Defendant.

No. CV-13-08206-PCT-DGC

**ORDER**

Plaintiff filed an application for disability insurance benefits on May 24, 2010, alleging disability beginning August 30, 2009. Tr. at 10. The application was denied on September 2, 2010, and upon reconsideration on February 11, 2011. *Id.* Plaintiff was granted a hearing in which he appeared with counsel before Administrative Law Judge ("ALJ") Patricia Bucci on May 10, 2012. *Id.* The ALJ determined that Plaintiff was not disabled under the relevant provisions of the Social Security Act. Tr. at 20. The Appeals Council denied review on June 17, 2013 (Tr. at 1), and Plaintiff filed this action seeking reversal of the denial and remand for an award of benefits. Doc. 16. Defendant has filed a memorandum in opposition (Doc. 17), and Plaintiff has filed a reply (Doc. 18). Neither party has requested oral argument. For the reasons that follow, the Court will remand for an award of benefits.

**I. Standard of Review.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

For purposes of Social Security benefits determinations, a disability is

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505.

Determining whether a claimant is disabled involves a sequential five-step evaluation. The claimant must show that (1) he is not currently engaged in substantial gainful employment, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work.[1] If at any step the Commission determines that a claimant is or is not disabled, the analysis ends; otherwise, it proceeds. If the claimant establishes his burden through step four, the Commissioner must find the claimant disabled unless he finds that the claimant can make an adjustment to other work. The Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

/ / /

---

[1] RFC is the most a claimant can do with the limitations caused by his impairments. *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); 20 C.F.R. § 416.945(a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

**II. Analysis.**

The ALJ found at step one that Plaintiff had not worked since August 30, 2009 through the date he was last insured on June 3, 2011. Tr. at 12. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post bilateral total knee replacements with infection, complications, and revision; rheumatoid arthritis; lumbar degenerative disc disease; hypertension; and obesity. *Id*. The ALJ found at step three that none of the impairments or combination thereof met or medically equaled one of the listed impairments. *Id*. at 14. The ALJ found that Plaintiff had the RFC to perform sedentary work, with limited exceptions, including occasional ability to climb ramps or stairs, balance, crouch, kneel, crawl, and stoop. *Id*. The ALJ found at step four that Plaintiff was unable to perform any past relevant work. *Id*. at 19. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *Id*. The ALJ therefore concluded that Plaintiff was not disabled. *Id*. at 20.

Plaintiff argues that the ALJ's determination was based on legal error because (1) she erroneously gave a treating physician's opinion little weight and a non-treating physician's opinion great weight, thereby mischaracterizing Plaintiff's Residual Functioning Capacity ("RFC"); and (2) she failed to consider the side effects of Plaintiff's medications on his ability to work. Doc. 16 at 4. Plaintiff asserts that, upon remand, this matter should be assigned to a new ALJ because Judge Bucci was prejudiced against Plaintiff. *Id*.

**A. Medical Opinions.**

Plaintiff argues that the ALJ erred at step four when she found that Plaintiff had the RFC to perform sedentary work. Doc. 16 at 5. Specifically, Plaintiff argues that the ALJ should not have given little weight to the opinions of treating physician Jaume and Nurse Practitioner May, and that the ALJ improperly gave great weight to non-treating medical opinions from the state agency consultants.

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*,

533 F.3d 1035, 1041 (9th Cir. 2008); *see* 20 C.F.R. § 404.1527(c); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.*

The ALJ discredited a January 2010 medical source statement from treating physician Francisco Jaume regarding Plaintiff's ability to do work, noting that it had not been updated and that it was "not consistent with the doctor's own objective and clinical findings and it appears to be based upon the claimant's subjective complaints," which the ALJ also discredited. Tr. at 17-18. Plaintiff argues that this was legal error and, had the ALJ properly credited this statement by a treating physician, that she would have found Plaintiff incapable of significant gainful activity. Doc. 16 at 5.

Dr. Jaume was the Plaintiff's treating physician from June 14, 2007 until April 6, 2010. Tr. at 259, 233. Dr. Jaume issued his statement as to Plaintiff's ability to do work on January 5, 2010. Tr. 210-12. The statement notes that Plaintiff could lift or carry less than five pounds, he could stand or walk less than one hour in a typical work day, he could sit less than one hour in a typical work day, breaks would not provide him sufficient relief, and he could never climb, balance, stoop, kneel, crouch or crawl as part of his work. *Id*. Dr. Jaume based these conclusions on x-rays, medical history, and physical exams. *Id*. at 212. Instead of crediting Dr. Jaume's statement, the ALJ gave great weight to the opinions of the non-treating, state agency physicians, who said that Plaintiff could perform a range of sedentary exertion. Tr. at 17.

The ALJ may reject the contradicted opinion of a treating or examining physician by making "findings setting forth specific and legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957

(9th Cir. 2002) (citation and quotation omitted). "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Id.* Further, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.*

The ALJ stated that Dr. Jaume's medical source statement regarding Plaintiff's ability to do work was not consistent with his own medical findings. Tr. 18. But the ALJ failed to identify any of Dr. Jaume's medical findings with which his opinion was inconsistent. Earlier in her opinion, the ALJ does go through Plaintiff's 2009 and 2010 knee problems in detail. Tr. at 15. Notably, however, this evidence pre-dates April 2010 when Dr. Jaume stopped treating Plaintiff – the date at which the ALJ said Dr. Jaume's opinion was no longer reliable because it was out of date.

The only other medical evidence that the ALJ discusses does not appear to contradict Dr. Jaume's report. For example, the ALJ stated that treatment notes indicate that Plaintiff saw a rheumatologist for his arthritis only every four months, "which suggests his symptoms were not so severe as to warrant consistent professional management," and that the records indicate that he tolerated his medication well, and "reported feeling fair during the relevant period." Tr. at 16. She states that Plaintiff "regularly denied swelling, numbness, or erythema of the joints," and that Plaintiff's minimal complaints "further damage the claimant's credibility" regarding his current claims of sustained pain and physical limitations. *Id*. But this medical evidence is not so straight-forward. The treatment notes from Dr. Ravi Bhalla that the ALJ cites as support for her statement that "the claimant regularly denied swelling, numbness or erythema of the joints" do, in fact, note swelling and crepitus in Plaintiff's joints, particularly in his knees. Tr. at 286 ("Right knee: Swelling"), 290 (same). 293 (same), 388 (same), 1694

(noting swelling in Plaintiff's wrist). The notes do at other times indicate that Plaintiff reports "no swelling," but given the inconsistency of this medical evidence, the Court cannot conclude that this is substantial evidence that would justify rejecting Dr. Jaume's opinion.

The ALJ also stated that claimant's daily activities belie any finding of total disability, noting that Plaintiff's physical impairments "did not appear to significantly limit his daily functional abilities" because Plaintiff played the guitar, got his children up and ready for school, performed limited household chores, prepared meals, cared for his own hygiene/grooming, drove a vehicle, shopped, managed the family's finances, and was also primarily responsible for homeschooling his son. Tr. 17-18. But Plaintiff's testimony was that he can do the grocery shopping if he is able to do so in a motorized cart, that by preparing meals he meant that he can make a sandwich for his son at lunch, that by driving he meant that he can do so for up to half an hour at a time only, and that his homeschooling duties consist of lying on the couch while his son attends school on-line. Tr. at 33-36. The ALJ's edited recitation of Plaintiff's daily activities is not, therefore, substantial evidence that justifies rejecting a treating source opinion.

The Court also has not been able to discern any clinical findings by Dr. Jaume in the record that are inconsistent with his January 2010 assessment. Plaintiff met with Dr. Jaume three times in September, twice in October, once in November, and once in December of 2009 about his knee pain. Tr. at 234-41. Each time, Dr. Jaume noted a severe infection in Plaintiff's knee. *Id*. After Dr. Jaume's January 2010 medical source opinion, he met with Plaintiff every month through April 2010, when he stopped treating Plaintiff. Tr. at 226-233. During those months, Plaintiff underwent another procedure, treated infection in his knee with antibiotics, and immobilized his knee. *Id*. In total, Plaintiff underwent seven knee surgeries, all performed by Dr. Jaume. *Id*. at 40. In April 2010, Dr. Jaume did note improvement, stating that "patient presents today doing well . . . has finished out his antibiotics," but even at this point Plaintiff's knee remained immobilized. *Id*. at 233. Nothing in these clinical notes is inconsistent with Dr. Jaume's

January 2010 assessment, and the ALJ has articulated no medical findings by the doctor that show such inconsistencies.

The ALJ's only other justification for rejecting Dr. Jaume's opinion is that Dr. Jaume never updated it after January 2010 and that, in his January 2010 assessment, Dr. Jaume noted the period of time covered by the assessment was "to be determined." Tr. at 17-18. Plaintiff argues, however, that Dr. Jaume's "to be determined" notation was reflective only of the unclear duration of the impairment, but that it did not indicate that Plaintiff's impairments were not permanent. Doc. 18 at 2-3. In response, Defendant argues that "the ALJ reasonably concluded that Dr. Jaume's January 2010 limitations were not intended to be permanent limitations." Doc. 17 at 13.

The Court cannot conclude that Dr. Jaume's opinion, issued in January 2010, was invalid or obsolete merely from this notation. The opinion was issued by the physician who provided the vast majority of Plaintiff's medical care and performed all of Plaintiff's knee surgeries. January 2010 falls squarely within the period during which Plaintiff is seeking benefits, and speculation by the ALJ that, had the opinion been updated at a later time it would have shown improvement in the Plaintiff's functioning, is simply not substantial evidence that the opinion should be accorded little weight.

In sum, the ALJ failed to provide specific and legitimate reasons to conclude that Dr. Jaume's January 2010 assessment was meant to reflect only temporary limitations, and she also did not support her finding with evidence that Plaintiff's physical limitations improved after April 2010 such that Dr. Jaume's assessment did not remain valid for the relevant time period. Tr. at 18. Because the Court finds that this was legal error, the ALJ's decision is vacated.[2]

/ / /

---

[2] The ALJ did properly reject the opinion of Nurse Practitioner Lea Way, who, like Dr. Jaume, opined that claimant's condition kept him from working and that he could not sustain work on a regular and consistent basis. Tr. at 18. Nurse practitioners are not acceptable medical sources, and the ALJ therefore need only give germane reasons for discounting her opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ did so. Tr. 18.

**B. Remand.**

Having decided to vacate Defendant's decision, the Court has the discretion to remand the case for further development of the record or for an award benefits. *See Reddick*, 157 F.3d at 728. In *Smolen v. Chater*, the Ninth Circuit held that evidence should be credited and an action remanded for an immediate award of benefits when the following three factors are satisfied: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. 80 F.3d 1273, 1292 (9th Cir. 1996); *see Varney v. Sec. of Health & Human Servs.*, 859 F.2d 1396, 1400 (9th Cir. 1988) ("In cases where there are no outstanding issues that must be resolved before a proper determination can be made, and where it is clear from the record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony."); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (same); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("In a recent case where the ALJ failed to provide clear and convincing reasons for discounting the opinion of claimant's treating physician, we accepted the physician's uncontradicted testimony as true and awarded benefits.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988)); *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989) (extending *Varney*'s "credit as true" rule to a case with outstanding issues where the claimant already had experienced a long delay and a treating doctor supported the claimant's testimony).

Defendant argues that it would be improper to remand for an award of benefits. Doc. 17 at 20-22. Defendant cites *Strauss v. Commissioner of the Social Security Administration*, 635 F.3d 1135, 1138 (9th Cir. 2011), as stating that "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." Defendant argues that "Plaintiff has not met his burden to prove that he was disabled, so an award of benefits is improper." *Id*. at 20

Defendant further argues that "where 'additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.'" *Id.* (quoting *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). Defendant finally argues that the 'credit-as-true' rule, which allows a reviewing court to require the Commissioner to accept certain evidence as true if the ALJ failed to articulate sufficient reasons for discrediting it, *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009), does not apply here because "the record contains contradictory medical opinions and evidence inconsistent with a finding of disability." *Id.* at 18.

The Court has found that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Dr. Jaume, Plaintiff's primary treating physician. During the hearing, the ALJ asked the vocational expert whether, if Plaintiff were limited to the capabilities articulated in Dr. Jaume's medical source opinion, there would be any work available for him, and the vocational expert testified that there would not. Tr. at 49. The procedural error the Court finds in this case is precisely the type of error that the Ninth Circuit in *Strauss* confirmed requires remand for an award of benefits: one in which the ALJ erred in discrediting evidence and, absent any outstanding issues to be resolved, "it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Strauss*, 635 F.3d at 1138 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).

Moreover, the overwhelming authority in this Circuit makes clear that the "credit as true" doctrine is mandatory. *See Lester*, 81 F.3d at 834; *Smolen*, 80 F.3d at 1292; *Reddick*, 157 F.3d at 729; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 926 (9th Cir. 2002); *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004); *Benecke*, 379 F.3d at 593-95; *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007); *Lingenfelter v. Astrue*, 504 F.3d. at 1041 ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to

award benefits[.]").[3]

Applying these cases, the Court concludes that the improperly rejected opinion of Dr. Jaume must be credited as true and, when credited as true and combined with the vocational expert's opinion, it requires an award of benefits. Because the Court will vacate and remand for benefits on these grounds, Plaintiff's other arguments will not be addressed.

**IT IS ORDERED** vacating the ALJ's denial of benefits and remanding for an award of disability benefits.

Dated this 15th day of April, 2014.

David G. Campbell
United States District Judge

[3] This Court disagrees with the Ninth Circuit's credit as true doctrine. The Court is bound, nonetheless, to follow Ninth Circuit precedent.